**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | | |
|---|---|---|
| SEAN RODNEY ORTH, | ) | 3:06-CV-481-LRH (RAM) |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| DENNIS BALAAM, WASHOE COUNTY SHERIFF'S DEPARTMENT, CITY OF RENO POLICE DEPARTMENT, KENNETH HARMON, DAVE KELLER, JOSEPH LEVER, REED THOMAS, DAVID CLIFTON, TAMMY RIGGS, DENISE GENIO, and MARY BOXX, | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is the Washoe County Defendants' Motion to Dismiss (Doc. #53[1]), the City of Reno Defendants' Motion to Dismiss (Doc. #54), and Motions to Dismiss by Defendants David Clifton (Doc. #71) and Tammy Riggs (Doc. #86)[2]. Plaintiff has opposed (Doc. ## 102, 101, and 100), and Defendants have replied (Doc. ## 104 and 105). After a thorough review, the court recommends that the motions be granted in part and denied in part.

///

---

[1] Refers to the court's docket number.

[2] Defendant Clifton has joined Defendant Riggs's Motion to Dismiss. (Doc. #87.) Defendants Boxx and Balaam have joined the Washoe County Defendants' Motion to Dismiss. (Doc. ##88 and 109).

1

## I. BACKGROUND

This is a prisoner civil rights complaint brought under 42 U.S.C. § 1983. Plaintiff Sean Rodney Orth ("Plaintiff") brings multiple claims related to his pre-trial detention at the Washoe County Detention Center in Reno, Nevada from 2005-06. (Pl.'s 2d Am. Compl. (Doc. #43) 1.)

Count 1 of the complaint alleges that Defendant Harmon, an officer of the Reno Police Department, caused Plaintiff's arrest in May 2005 based on information Defendant Harmon knew was unreliable. Plaintiff was charged with Being an Ex-Felon in Possession of a Firearm. This charge was allegedly dismissed in June 2007. Based on this allegation, Plaintiff claims a violation of his rights under the Fourth and Fourteenth Amendments, as well as the torts of false arrest and malicious prosecution under state and federal law.

Count 2 alleges a custom, policy, or agreement by the RPD and the Washoe County Sheriff's Office to delay taking arrestees before a magistrate for a probable cause determination. Plaintiff alleges that he was held for a full week on an Ex-Felon in Possession of a Firearm charge from May 11th to May 18th, 2005 before he was provided with a hearing. Based on this allegation, Plaintiff claims a violation of his rights under the Fourth and Fourteenth Amendments and unlawful imprisonment under Nevada law. Defendant Harmon is also named in this count.

Count 3 alleges that Plaintiff's Fourth Amendments rights were violated by an unreasonable search and seizure of a hotel room in which Plaintiff was an overnight guest. The search led to Plaintiff being charged with two counts of Trafficking in a Controlled Substance, which were eventually dismissed in June 2007.

Based on the facts above, Count 4 alleges a violation of Plaintiff's Fourth and Fourteenth Amendment rights as well as false arrest and malicious prosecution for the dismissed trafficking charges under state and federal law.

Count 5 is similar to Count 2, but is based on the Trafficking in a Controlled Substance charge. Plaintiff alleges a cause of action for unlawful imprisonment under both state and federal law. Defendants Lever and Harmon are also named in this count.

Count 6 alleges that Defendants Riggs and Clifton, Deputy District Attorneys for Washoe County, appeared before the district court on February 21st, 2006 seeking a retake bench warrant naming Plaintiff. During this time, Plaintiff had been released from custody after successfully obtaining habeas relief from the district court based upon the contention that his preliminary hearing had been continued without good cause. (Def.'s Mtn. 4.) Plaintiff alleges that the district court was without jurisdiction to consider the retake warrant and that Defendants interfered with his liberty interests when they sought his recapture. Based on these allegations, Plaintiff claims a violation of his Fourth, Fifth, and Fourteenth Amendment rights.

Count 7 alleges that Defendant Thomas failed to fully apprise the court of the circumstances surrounding Plaintiff's trafficking charge when providing testimony for the re-take warrant in February 2006. Plaintiff claims a violation of his Fifth and Fourteenth Amendment rights as well as false arrest and malicious prosecution torts under federal and state law.

Count 8 alleges that the re-take warrant issued in February 2006 required the Sheriff's Office to bring Plaintiff before a magistrate immediately upon arrest or the next day that court was in session. Instead, Plaintiff alleges that he was held between February 22nd and May 31st, 2006 without making a court appearance. Plaintiff claims a violation of his Fourth, Fifth, and Fourteenth Amendment rights, as well as unlawful imprisonment under state and federal law.

Count 9 is derivative of the allegations in Counts 6 through 8. It alleges that Defendants Keller and Joseph wrongfully arrested Plaintiff based on the re-take warrant on February 22, 2006 and failed to bring him to court. Plaintiff claims a violation of the Fourth and Fourteenth Amendments.

Count 10 alleges that the Sheriff's Office has a custom or policy of administratively segregating inmates in a behavior review program that mirrors the conditions of disciplinary segregation. In particular, Plaintiff alleges that he was denied adequate tier time, he was not allowed to possess reading books in his cell, he was forced to expose himself to his cellmate while using the bathroom, his cell was too small, he was not allowed to buy commissary items,

and that his visitation privileges were unfairly curtailed. Plaintiff also alleges that he was entitled to due process when he was transferred from general population intake to the behavior review program. Defendants Boxx and Genio are named as supervisors of the behavior review program and allegedly had the authority to transfer Plaintiff back to general population. In this version of the complaint, Plaintiff does not indicate precisely how long he was in the behavior review program before being returned to general population, but a prior version indicates that he was segregated for two weeks. (Pl.'s 1st Am. Compl. (Doc. #19) 4.)

## II. LEGAL STANDARD

"A dismissal under Fed.R.Civ.P. 12(b)(6) is essentially a ruling on a question of law." *North Star Inter'l v. Ariz. Corp. Comm.,* 720 F.2d 578, 580 (9th Cir. 1983) (citation omitted). At minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The complaint need not contain detailed factual allegations, but it must contain more than "a formulaic recitation of the elements of a cause of action." *Id.* at 1965. The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 1964 (internal quotations and citation omitted).

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, all material allegations in the complaint are accepted as true and are to be construed in a light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). For a defendant-movant to succeed, it must appear to a certainty that a plaintiff will not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Id.* at 338. A complaint may be dismissed as a matter of law for, "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *Smilecare Dental Group v. Delta Dental Plan,* 88 F.3d 780, 783 (9th Cir 1996) (quoting *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984)).

4

A *pro se* plaintiff's complaint must be construed liberally and can only be dismissed where it appears certain from the complaint that the plaintiff would not be entitled to relief. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996). Although allegations of a *pro se* complaint are held to a less stringent standard than formal pleadings drafted by a lawyer, *Haines v. Kerner*, 404 U.S. 519 (1972), sweeping conclusory allegations will not suffice. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988).

### III. DISCUSSION

**A.   STATUTE OF LIMITATIONS**

Section 1983 actions are treated as state law personal injury actions for purposes of applying the statute of limitations. *Harding v. Balceran*, 889 F.2d 906, 907 (9th Cir. 1989). The Nevada statute of limitations requires personal injury actions to be brought within two years of the injury. Nev. Rev. St. § 11.190(4)(e). Therefore, the limitations period for bringing a § 1983 action is two years as well. *See* Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superceded by statute on other grounds,* 28 U.S.C. § 1658*, as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-80, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). Federal law governs when this period begins to run and provides that a § 1983 claim accrues when the plaintiff has a complete and present cause of action for which he can file and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).[3]

The parties dispute when the claims accrued and the two-year statute of limitations period began to run. In *Wallace*, the plaintiff's murder conviction was reversed on appeal on the ground that he had been arrested without probable cause, thereby invalidating his subsequent confession to the police. *Id.* at 387, 127 S.Ct. at 1094. The state then dropped the

---

[3] Plaintiff does not dispute that his claims do not relate back to the First Amended Complaint (Doc. #19). While the First Amended complaint exclusively raised claims related to the conditions of confinement at the Detention Facility, the bulk of the current complaint relates to the proceedings leading to Plaintiff's confinement as a pretrial detainee. As such, they cannot be characterized as arising from the same transaction or occurrence as the original pleading so as to qualify for a tolling of the statute of limitations under the relation back doctrine. Fed. R. Civ. P. 15(c)(2).

5

charges against him and the plaintiff was released. He subsequently brought a § 1983 action against the police department based on his illegal arrest. *Id.* Analogizing the plaintiff's Fourth Amendment claims to common law false arrest and false imprisonment, the Supreme Court reasoned that his claims accrued when the false imprisonment came to an end. "Since a false imprisonment claim consists of detention without legal process, a false imprisonment claim accrues when the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." 549 U.S. at 389, 127 S.Ct. at 1096 (emphasis in original). The court clarified that any claims for damages after legal process issued were cognizable as for malicious prosecution, which "remedies detention accompanied, not by absence of legal process, but by *wrongful institution of legal process*." 549 U.S. at 390, 127 S.Ct. at 1097 (emphasis in original). The Court rejected the contention that the plaintiff's claim did not accrue until the state dropped its charges against him. Similarly, the *Heck* doctrine[4] did not foreclose the § 1983 cause of action until after the criminal charges had been dismissed. *Id.*

Like the plaintiff in *Wallace*, Inmate Orth is now attempting to bring a number of claims related to an allegedly unlawful arrest.[5] Plaintiff was bound over to the Second Judicial District Court on July 1st, 2005 for the Ex-Felon in Possession of a Firearm and Trafficking charges. (Defs.' Mtn. to Dismiss, Ex. 1, at 3.[6]) The statute of limitations bars any claims based on Plaintiff's initial unlawful arrest brought after July 1st, 2007. Plaintiff filed his motion for leave to file the Second Amended complaint on January 17th, 2008 (Doc. #36), and the complaint

---

[4] In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that a § 1983 claim implicating the validity of an inmate's conviction did not accrue until the conviction was reversed. In *Wallace*, however, the Court clarified that the *Heck* doctrine does not apply when at the time plaintiff's claim accrues, there is no pending criminal conviction that a § 1983 cause of action could impugn. 127 S.Ct. at 1098.

[5] Plaintiff brings a cause of action for "unlawful imprisonment" in Counts 2 and 5. The court construes these as false imprisonment claims.

[6] Generally, when resolving a motion to dismiss based on Rule 12(b)(6), the court may not consider materials outside the pleadings. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, a court may consider a matter that is properly the subject of judicial notice, such as matters of public record. *Id.* at 689. The court takes judicial notice that this exhibit contains court documents that are matters of public record.

was filed on June 2nd, 2008 (Doc. #43). Therefore, the following federal claims[7] relating to false arrest and false imprisonment should be dismissed:

- Count 1, which alleges that Plaintiff was falsely imprisoned based on an invalid arrest warrant obtained by Defendant Harmon;

- Count 2, which alleges that he was not timely brought before a magistrate upon his initial arrest for a weapons possession charge;

- Count 4, which alleges that Plaintiff was unlawfully detained pursuant to an unreasonable search and seizure of his girlfriend's hotel room; and

- Count 5, which contains the same allegations as Count 2 with regard to a drug possession charge.

The other federal claims (Counts 6 thorough 9) are based on Plaintiff's confinement pursuant to a bench warrant that was obtained on or around February 23, 2006. Plaintiff alleges that he was denied an appearance before a magistrate from this date until May 31st, 2006. (Pl.'s Compl. 18.) At this point, Plaintiff had already been subject to process, having attended his arraignment, a preliminary hearing, and a probable cause determination. Therefore, Plaintiff is seeking a remedy not for the absence of legal process, but the "wrongful institution" of legal process against him, based on such defects as a lack of jurisdiction by the retake warrant-issuing court (Count 6), incomplete testimony by law enforcement personnel at the warrant hearing (Count 7), a delay in judicial proceedings once in custody (Count 8), and his wrongful re-arrest (Count 9). The general rule for malicious prosecution claims is that they do not accrue until the proceedings conclusively terminate in the plaintiff's favor. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995); *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir.1983). In this case, the claims were dismissed in June 2007. Therefore, because the Second Amended complaint was filed before June of this year (Doc. #43), the statute of limitations does not bar

---

[7] Counts 1 and 4 also allege malicious prosecution in addition to false arrest/unlawful imprisonment, but these claims must be dismissed because they are based on conduct arising before legal process issued. *See Wallace,* 127 S.Ct. at 1097.

7

these remaining claims.[8]

Defendants' argument that these remaining claims are *Heck* barred is also not well-taken. In Counts 6 and 7, Plaintiff is not attacking the basis for his conviction, but rather the issuance of his retake warrant. Counts 8 and 9 involve the alleged failure of Reno Police Department officers and the Washoe County Sheriff's Office to promptly bring Plaintiff before a magistrate after he was taken into custody. Neither claim if successful would imply that Plaintiff's subsequent criminal conviction was invalid, but rather that Plaintiff was improperly confined before trial. Accordingly, the *Heck* bar does not apply here.

With respect to Count 3 of the complaint, a Fourth Amendment claim brought under § 1983 alleging an illegal search and seizure does not accrue until the underlying criminal charges have been dismissed. *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000). This is because while the charges are pending, such a claim if successful would necessarily imply the invalidity of a conviction in a subsequent criminal prosecution. Therefore, the Ninth Circuit Court of Appeals follows the rule adopted in the Second, Third, Seventh, Tenth, and Eleventh Circuits that such a claim does not accrue so long as the potential for a conviction in the pending criminal prosecution continues to exist. *Id.* at 1014. In this case, the potential for a conviction ended in June 2007, when the drug charges stemming from the search were dismissed. Count 3 is therefore allowable under the statute of limitations.

Defendants do not address the statute of limitations or the accrual date for Plaintiff's state law tort claims in Counts 1, 2, 4, and 5 for false arrest and false imprisonment. The Nevada Revised Statutes provide a two-year limitations period for false imprisonment. Nev. Rev. St. § 11.190(c). The Nevada Supreme Court has found that the tort of false arrest is an

---

[8] The distinction between wrongful arrest and malicious prosecution is not entirely clear where, as here, the plaintiff is challenging his rearrest. Assuming the claims for the subsequent period of confinement accrue when Plaintiff was returned to the Detention Facility, as would be the case for a false imprisonment claim, the cutoff date under the statute of limitations would be February 23, 2008. Plaintiff met this deadline by filing his motion for leave to amend in January of that year, which effectively tolled the statute of limitations and allowed him to timely file the complaint. *See In re Enron Corp. Secs.*, 465 F.Supp.2d 687, 694 (S.D.Tex. 2006) (citing *Stafford v. Clark Const. Co.*, 901 F.Supp. 232, 233 (E.D.Tex.1995); *Bradley v. Armstrong Rubber Co.*, 46 F.Supp.2d 583, 586 (S.D.Miss.1999)).

1  "integral part" of false imprisonment. *Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d
2  494, 497 (Nev. 1970). Given the close relationship between these causes of action, the court
3  presumes that the same limitations period applies. "'The general rule concerning statutes of
4  limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries
5  for which relief could be sought.'" *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1024, 967 P.2d 437,
6  440 (Nev. 1998) (quoting *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18, 20 (1990)). If this
7  general rule applies, this would suggest that the state law claims accrued upon Plaintiff's initial
8  arrest in May 2005 and are therefore barred. As discussed above, however, the Supreme Court
9  has noted that at common law, a false imprisonment claim accrued when the false
10 imprisonment ended through a prisoner being subjected to legal process. *Wallace*, 549 U.S.
11 at 389, 127 S.Ct. at 1096. Assuming Nevada courts follow this common law approach, this
12 would suggest the same July 2007 accrual date as for the federal claims above. Therefore,
13 under either rule for accrual, Plaintiff's state law claims in Counts 1, 2, 4, and 5 are time-barred.

**B.   FAILURE TO TIMELY SERVE**

15 Rule 4(m) of the Federal Rules of Civil Procedure requires that a defendant must be
16 served within 120 days after the complaint is filed. Fed. R. Civ. P. 4(m). The court ordered
17 Plaintiff to serve the Second Amended Complaint on all defendants within 120 days of June
18 2nd, 2008. (Doc. #42.) Plaintiff was originally required to return the necessary forms for the
19 United States Marshal's office to effectuate service within twenty days. (*Id.*) Plaintiff sought
20 an extension to comply with this order, which the court granted, and Plaintiff timely returned
21 the form the Marshal on July 25th. Presumably, due to the delay in providing these forms to
22 the Marshal's office, the Marshal was unable to serve the defendants before the expiration of
23 the 120-day deadline. However, because the court granted Plaintiff's request for an extension
24 of time to provide the forms to the Marshal, the court finds there is "good cause" for extending
25 the deadline for service. *See* Fed. R. Civ. P. 4(m). Therefore, the court denies Defendants'
26 motion to dismiss based on a failure to timely serve the complaint.
27 ///

## C. PROSECUTORIAL IMMUNITY

In *Imbler v. Pachtman*, the Supreme Court recognized the doctrine of absolute prosecutorial immunity from a civil suit for damages under § 1983. 424 U.S. 409, 431, 96 S.Ct 984, 995 47 L.Ed.2d 128 (1976). The Court held that such activities as using false testimony at trial, suppressing exculpatory evidence, and malicious prosecution, while culpable acts, were nevertheless "intimately associated with the judicial phase of the criminal process" and should be cloaked by immunity for various policy reasons. This doctrine has been extended to a prosecutor's appearance in court in support of an application for a search warrant and the presentation of evidence at the hearing. *Burns v. Reed*, 500 U.S. 478, 492, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991). These acts "clearly involve the prosecutor's role as an advocate for the State, rather than his role as an administrator or investigative officer." *Id.* at 491, 111 S.Ct. at 1984 (quotations omitted). However, the Court has later clarified that "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993). More recently, the Supreme Court considered the applicability of absolute immunity to the filing of three documents by a prosecutor: an information, a motion for an arrest warrant, and a sworn document establishing probable cause for the warrant. *Kalina v. Fletcher*, 522 U.S. 118, 127, 118 S.Ct. 501, 508, 139 L.Ed.2d 471 (1997). The Court reasoned as follows:

> These cases make it quite clear that petitioner's activities in connection with the preparation and filing of two of the three charging documents-the information and the motion for an arrest warrant-are protected by absolute immunity. Indeed, except for her act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well.

500 U.S. at 494, 111 S.Ct. 1934 (citations omitted).

In Count 6, Plaintiff argues that Prosecutors Clifton and Riggs caused his constitutional rights to be violated when they obtained a bench warrant for his rearrest in February 2006. Specifically, Plaintiff argues that this was done in bad faith because these attorneys knew that the district court lacked jurisdiction to issue the warrant. (Pl.'s Opp. 21.) Even assuming that

10

contention is true, *Imbler* established that the state of mind of the party performing the prosecutorial function does not determine whether immunity applies. These claims derive from Defendants Clifton and Riggs's acts during an ex parte judicial proceeding where they presented oral argument and witness testimony in support of an arrest warrant. *Burns* and *Kalina* held that the act of procuring a warrant falls within the prosecutor's role as an advocate for the state as long as the prosecutor does not also act as an attesting witness. Additionally, the facts of this case pass the minimum threshold recognized in *Fitzsimmons* for immunity, as probable cause for the rearrest had already been established in the prior proceedings. Plaintiff argues that the named defendants were not authorized to act in a prosecutorial capacity due to a jurisdictional infirmity when they were obtaining the warrant.[9] However, allowing this claim to go forward based on a procedural technicality would contravene the broad policy rationale for the immunity doctrine recognized in *Imbler*. Therefore, the court finds that the acts alleged in Count 6 were cloaked in absolute prosecutorial immunity, and it should be dismissed from the complaint.

D.  **COUNTS 8 AND 9**

Plaintiff alleges that members of the Reno Police Department and the Sheriff's Office conspired to rearrest him based on an invalid warrant and subsequently failed to bring him before a magistrate as the warrant required. Law enforcement personnel are entitled to rely in good faith on a search warrant when it is objectively reasonable to do so even if it is later deemed to be invalid. *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). While this doctrine may absolve the defendants of any liability based on the arrest, it does not address Plaintiff's contention that they failed to promptly bring him

---

[9]The Nevada Supreme Court has determined that the district court was without jurisdiction to issue the warrant. (Pl.'s App. of Exs. (Doc. #103) 92 [Order Granting Pet. in Part, Nev. Sup. Ct. Case No. 47152, June 30, 2006].) By previously granting Plaintiff's petition for a writ of habeas corpus, the district court relinquished jurisdiction over the case. The court found that the district judge had no authority to issue the retake warrant until a remittitur issued reinstating the district court's jurisdiction. At the time of the application for the bench warrant, the Nevada Supreme Court had reversed an order granting the habeas petition and had remanded the case back to the district court for further proceedings, but it had not yet issued the remittitur. (*Id*. at 90.)

11

before a magistrate. Defendants suggest that the delay is attributable to Plaintiff's filing of a writ of habeas corpus with the Nevada Supreme Court. This allegedly caused the district court to refuse to allow Plaintiff to make an appearance because it had been divested of jurisdiction. At this stage of the proceedings, it is unclear whether this is what actually transpired. Defendants make a vague reference to the docket sheet for Plaintiff's criminal case in support of this explanation (Doc. #104 at 9), but the court is unable to locate an entry supporting this account of the events. On June 14th, 2006, the court did issue an order that it lacked jurisdiction to address a motion filed by Plaintiff, but the subject of the motion or the content of the order are not indicated. (Mtn. to Dismiss (Doc. #53-2) Ex. 1, at 12.) Moreover, this was several months after Plaintiff had been taken into custody on the retake warrant and should have made a court appearance, assuming he was entitled to one. The issue of whether Defendants were somehow precluded from allowing Plaintiff to make a court appearance must await the presentation of evidence.

**E.    COUNT 10**

Plaintiff alleges that various conditions of his pre-trial confinement at the Washoe County Detention Facility amounted to punishment without due process of law. Defendants appear to rely on the court's original screening order (Doc. #9) dismissing a similar claim, arguing that Count 10 reasserts them. (Def.'s Reply to Opp. to Mtn. to Dismiss (Doc. #104) 11.) However, the court subsequently granted Plaintiff's motion for reconsideration allowing this claim to go forward in the First Amended complaint. (July 5th, 2007 Order (Doc. #18) 2-3.) As the court noted in that order, not all restrictions on movement or deprivations of choice and privacy arising from pretrial detention offend the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979). However, Defendants do not address Plaintiff's allegations that his treatment mirrored the restrictions imposed on disciplinary segregated inmates, particularly with respect to tier time, visitation privileges, and possession of commissary items and reading materials. Neither do Defendants present a penological purpose for the challenged restrictions. *See* 441 U.S. at 538-39, 99 S.Ct. at 1873-74. Therefore,

the motion to dismiss this claim should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART and DENYING IN PART** Defendants' motions to dismiss (Doc. Nos. 53, 54, 71, and 86) as follows:

- The claims in Counts 1, 2, 4, 5, and 6 should be dismissed with prejudice;
- Defendants Riggs, Clifton, and then City of Reno Police Department should be dismissed from the lawsuit; and
- The motion to dismiss Counts 3 and 7 through 10 should be denied.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 5, 2009.

_____
UNITED STATES MAGISTRATE JUDGE