1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

SEAN RODNEY ORTH,                    )        3:06-cv-0481-LRH (RAM)
                                     )
            Plaintiff,               )        **REPORT AND RECOMMENDATION**
                                     )        **OF U.S. MAGISTRATE JUDGE**
      vs.                            )
                                     )
DENNIS BALAAM, et al.,               )
                                     )
            Defendants.              )
_____          )

       This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.  Before the court is the Motion for Summary Judgment of Defendants Harmon, Keller, Lever and Thomas (collectively, Reno Defendants). (Doc. # 150.)[1] Plaintiff opposed (Doc. # 165) and Reno Defendants replied (Doc. # 177).  Also before the court is the Motion for Summary Judgment of Defendants Washoe County Sheriff's Department, Balaam, Genio, and Boxx (collectively, Washoe County Defendants). (Doc. # 152.) Plaintiff has opposed (Doc. # 166) and Washoe County Defendants replied (Doc. # 178).  Finally, before the court is Plaintiff's Motion for Summary Judgment. (Doc. # 179.)[2]  Washoe County Defendants and Reno Defendants  opposed (Doc. # 180 and Doc. # 181) and Plaintiff replied (Doc. # 186).  After a thorough review, the court recommends: (1) the Reno Defendants' motion be granted; (2) the Washoe County Defendants' motion be granted; and (3) Plaintiff's motion be denied.

_____

[1] Refers to court's docket number.

[2] Plaintiff filed one set of exhibits supporting his motion for summary judgment and each of his oppositions.  (Doc. #167.)

# I. BACKGROUND

## A.   PLAINTIFF'S CLAIMS

This is an inmate civil rights complaint brought under 42 U.S.C. § 1983. (Pl.'s 2d Am. Compl. (Doc. # 43) 1.)  Plaintiff Sean Rodney Orth (Plaintiff) brings multiple claims relating to his pre-trial detention at the Washoe County Detention Facility in Reno, Nevada.  (*Id.*) Plaintiff's remaining claims are set forth at Counts 3 and 7 through 10.  (*See* Doc. # 112 and Doc. # 117.)  The remaining Defendants are Officers Harmon, Keller, Lever, and Thomas (collectively, Reno Defendants), and the Washoe County Sheriff's Department, Balaam, Genio, and Boxx (collectively, Washoe County Defendants).  (*Id.*)  Plaintiff seeks compensatory, statutory, and punitive damages as well as declaratory relief.  (Doc. # 43-1.)

Count 3 alleges that Defendants Harmon and Lever violated Plaintiff's Fourth Amendment rights as a result of an unreasonable search and seizure of a motel room in which Plaintiff was an overnight guest on May 11, 2005, leading to charges of two counts of trafficking in a controlled substance, which were eventually dismissed.  (Doc. # 43 5-7.)

Count 7 alleges that Defendant Thomas failed to fully apprise the court of the circumstances surrounding Plaintiff's trafficking and ex-felon in possession of a firearm charges when providing testimony to obtain a re-take warrant in February 2006.  (Doc. # 43 14-16.)  Plaintiff claims  violations of his Fourth, Fifth and Fourteenth Amendment rights as well as false arrest and malicious prosecution torts under federal and state law.  (*Id.*)

Count 8 alleges that the re-take warrant issued in February 2006 required the Washoe County Sheriff's Department and Defendant Balaam, as facilitator of the Washoe County Detention Facility, to bring Plaintiff before a magistrate immediately upon arrest or the next day that court was in session.  (Doc. # 43 17-18.)  Instead, Plaintiff alleges that he was held between February 22, 2006 and May 31, 2006 without making a court appearance.  (*Id.*) Plaintiff claims violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as false imprisonment under state and federal law.  (*Id.*)

Count 9 is derivative of the allegations in Counts 7 and 8. (Doc. # 43 19-22.) It alleges a conspiracy among the Washoe County Sheriff's Department, Balaam, Keller, Thomas, and Lever to deprive Plaintiff of his constitutional rights under the Fourth and Fourteenth Amendments related to his arrest and detention pursuant to the retake warrant. (*Id*.)

Count 10 alleges that the Washoe County Sheriff's Department and Balaam have a custom or policy of administratively segregating inmates in a behavior review program (Behavior Review) that mirrors the conditions of disciplinary segregation in violation of his due process rights under the Fourteenth Amendment. (Doc. # 43 23-27.) In particular, Plaintiff alleges that he was denied adequate tier time, he was not allowed to possess reading books in his cell, he was forced to expose himself to his cellmate while using the bathroom, his cell was too small, he was not allowed to buy commissary items, and his visitation privileges were unfairly curtailed. (*Id*.) Plaintiff also alleges that he was entitled to due process when he was transferred from general population intake to Behavior Review. (*Id*.) Defendants Boxx and Genio are named as supervisors of Behavior Review and allegedly had the authority to transfer Plaintiff back to general population. (*Id*.)

**B.    RELEVANT UNDERLYING FACTS**

The extensive underlying facts are critical to  the court's determination of the instant motions, and therefore the court provides a rather detailed summary of the relevant events.

The facts giving rise to this action are the result of two arrests of Plaintiff.  The first occurred on May 11, 2005, charging Plaintiff with two counts of trafficking in a controlled substance, eluding a police officer, and being an ex-felon in possession of a firearm.[3]  The second arrest was an "administrative booking" of Sparks Police Department occurring on May 16, 2005, charging Plaintiff with robbery with a deadly weapon, battery with a deadly weapon, and conspiracy to commit robbery with a deadly weapon.  On May 18, 2005, Plaintiff

---

[3] The court takes judicial notice of the dockets in Plaintiff's underlying criminal matters as well as his Nevada Supreme Court cases related to this action.

was arraigned at Reno Justice Court.  A preliminary hearing took place on June 28, 2005 and July 1, 2005, and Plaintiff was bound over for trial on all charges but one of the trafficking counts in the Second Judicial District Court, in and for Washoe County, State of Nevada (SJDC).  (Doc. # 167 Ex. 6, Ex. 7, Doc. # 166 Ex. 10.)  A criminal information was filed in SJDC on July 7, 2005 (Doc. # 166 Ex. 10), and Plaintiff was arraigned in SJDC on August 12, 2005.  (Doc. # 167 Ex. 7, Doc. # 166 Ex. 10, Doc. # 152 Ex. 6.)

On July 25, 2005, Plaintiff filed a proper person pretrial petition for a writ of habeas corpus (Habeas Petition), arguing various procedural deficiencies with respect to the proceedings in Reno Justice Court, and that there was insufficient evidence to be bound over on the trafficking charge.  (Doc. # 167 Ex. 7, Doc. # 152 Ex. 10.)

On October 19, 2005, the Honorable Robert Perry, SJDC, issued a decision granting the Habeas Petition (Habeas Decision) with respect to the procedural deficiencies, but specifically noting that he had made no determination as to the sufficiency of evidence on the trafficking charge.  (Doc. # 167 Ex. 7, Doc. # 152 Ex. 6.)  Defendant was released from custody, and the State appealed.  (*Id.*, Doc. # 166 Ex. 10.)

On February 17, 2006, the Nevada Supreme Court reversed the Habeas Decision. (Doc. # 167 Ex. 8, Doc. # 152 Ex. 10.)  On February 22, 2006, a hearing on an *ex parte* motion for re-take bench warrant was held before the Honorable Jerome Polaha, SJDC.  (Doc. # 152 Ex 1, Doc. # 167 Ex. 12.)  Judge Polaha granted the motion and the re-take warrant issued with bail set at the original amount of $100,000 cash only.  (Doc. # 167 Ex. 9 at 26:10-24, *see also* Doc. # 167 Ex. 9.)  Plaintiff was arrested pursuant to the re-take warrant and booked into the Washoe County Detention Facility on February 23, 2006.  (Doc. # 152 Ex. 3 at WC00001, Doc. # 167 Ex. 18.)

On February 27, 2006, Plaintiff filed a petition for rehearing with the Nevada Supreme Court concerning the February 17, 2006 reversal of the Habeas Petition.  (Doc. # 167 Ex. 10, Doc. # 152 Ex. 11.)  On April 21, 2006, the Nevada Supreme Court issued an order denying

4

rehearing.  (Doc. # 167 Ex. 10, Doc. # 152 Ex. 12.)  On the same date, Plaintiff filed a proper person petition for writ of mandamus in Nevada Supreme Court (Case No. 47152).  The remittitur was issued by the Nevada Supreme Court on May 17, 2006. (Doc. # 167 Ex. 10, Doc. # 152 Ex. 11, Ex. 13.)  On May 31, 2006, Plaintiff appeared in the SJDC. (Doc. # 152 Ex. 11, Ex. 13, Doc. # 167 Ex.  21.)

On June 30, 2006, the Nevada Supreme Court issued an order granting, in part, Plaintiff's proper person petition for writ of mandamus or prohibition finding: (1) because the remittitur on the reversal of the Habeas Decision did not issue until May 17, 2006, the SJDC lacked jurisdiction to issue the re-take warrant in February 2006, making it invalid; and (2) since the remittitur had since issued and SJDC's jurisdiction was reinstated, it directed the SJDC to reissue the retake warrant, nunc pro tunc to the date of the issuance of the remittitur. (Doc. # 177-1.)

On July 31, 2006, Plaintiff's bail was made bondable and he posted bail.  (Doc. # 167 Ex. 13.)  On August 21, 2006, Plaintiff was arrested on new charges including trafficking in a controlled substance and being an ex-felon in possession of a firearm, and was booked into the Washoe County Detention Facility. (Doc. # 152 Ex. 18, Ex. 19.)  Plaintiff was placed in intake pending medical review and classification, and was then given notice that he would be placed Behavior Review, an administrative segregation program, for a two-week period due to his criminal history and current charges. (Doc. # 152 Ex. 24, Ex. 25, Doc. # 167 Ex.  19.)  Plaintiff was released into general population on September 6, 2006. (Doc. # 152 Ex.  23.)

Plaintiff was convicted by a jury on charges arising from the trafficking and ex-felon in possession of a firearm charges for which he was arrested on August 21, 2006, and was also convicted on the robbery, conspiracy, and eluding a police officer charges. (Doc. # 150 Ex. 3.)

## II.  LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)(citations omitted). In

6

contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(citation omitted). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50, 255 (citations omitted).

# III.  DISCUSSION

## A.    WASHOE COUNTY SHERIFF'S DEPARTMENT

Washoe County Sheriff's Department argues it should be dismissed because it is not a legal entity that can be sued.  (Doc. # 152 19.)

Washoe County Defendants are correct that under Nevada law, "in the absence of statutory authorization, a department of the municipal government may not, in the department name, sue or be sued."  *Wayment v. Holmes*, 112 Nev. 232, 912 P.2d 816, 819 (Nev. 1996); *Schneider v. Elko County Sheriff's Dep't*, 17 F.Supp.2d 1162, 1165 (D. Nev. 1998) (finding that an action against Elko County Sheriff's Department was frivolous for lack of capacity to be sued).  As described in *Schneider*:

> Nevada defines a political subdivision as a "community action
> agency" as defined in the now repealed 42 U.S.C. § 2790.  NRS
> 41.0305.  42 U.S.C. § 2790, in turn, defined a community action
> agency as one with the power to enter into contracts, to receive and
> administer funds, and to delegate powers to other agencies.
> Economic Opportunity Amendments of 1967, Secs. 210(a)(1) &
> 212(a), 81 Stat. 691-94 (1967).  A Nevada county falls within this
> definition, but not a sheriff's department.

*Schneider*, 17 F.Supp.2d at 1164.  In reality, a judgment against these departments would be considered a judgment against their corresponding municipalities; however, the court cannot allow the case to proceed against a named entity which lacks the capacity to be sued under Nevada law.  *See id*.  Therefore, Washoe County Sheriff's Department should be granted summary judgment as to all claims.

## B.    THE *HECK* BAR

Reno Defendants argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Doc. # 150 4.)  The court has already ruled that the *Heck* bar does not apply

8

to Plaintiff's remaining claims.  (*See* Doc. # 112 and Doc. # 117.)  This is because with respect to Counts 7 through 10, none of these claims, if successful, would imply that Plaintiff's subsequent criminal conviction was invalid, but only that he was improperly confined prior to trial.  With respect to Count 3, while Reno Defendants appear to argue the claim is *Heck* barred because Plaintiff was ultimately convicted, Plaintiff was not convicted of the trafficking charges which are the subject of Count 3, and therefore the claim, if successful, would not imply that any underlying criminal conviction was invalid.  (*See* Doc. # 150 Ex. 4.)

**C.    COUNT 3**

In Count 3, Plaintiff alleges that Defendants Lever and Harmon violated his Fourth Amendment rights in connection with an unreasonable search and seizure of a motel room in which Plaintiff was an overnight guest, leading to charges of trafficking in a controlled substance which were eventually dismissed on motion by the State.  (Doc. # 43 5-7.)

Defendants Harmon and Lever claim that Count 3 fails because the registered occupant of the room, Ms. McKenzie, consented to the search of the room.  (Doc. # 150 4.)  They assert that the consent to the search of Plaintiff's belongings is valid because Ms. McKenzie had either actual or apparent authority to give consent.  (Doc. # 150 8.)  They also submit an Admonition and Waiver of Rights/Permission to Search form signed by Ms. McKenzie.  (Doc. # 150 Ex. 9.)  They contend that she had actual authority because she had joint access and control over the room and its contents.  (*Id.*)  In addition, they contend her apparent authority is demonstrated by the undisputed fact that she was the only person registered to the room, and when she gave express consent to search the room, it was reasonable for officers to believe she had authority to consent to the search.  (*Id.*)

Plaintiff admits that he was an overnight guest and that Ms. McKenzie was the only person registered to the room.  (Doc. # 43 5.)  He contends, however, that the consent given by Ms. McKenzie to search the room and its contents is invalid because at the time she gave the consent, she was herself illegally seized.  (*Id.* at 5-6, Doc. # 165 13.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  An individual may not challenge a search on Fourth Amendment grounds unless that individual has a reasonable expectation of privacy in the subject of the search. *Rakas v. Illinois*, 439 U.S. 128 (1979)(citations omitted); *see also U.S. v. Davis*, 322 F.3d 1163, 1167 (9th Cir. 2003).  The United States Supreme Court and Ninth Circuit have recognized that overnight guests can establish an expectation of privacy.  *See Davis*, 322 F.3d at 1167 (citing *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990); *United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000)).  However, a third party's consent to the search of another's belongings may be valid if the consenting party has either actual or apparent authority to give consent. *Davis*, 322 F.3d at 1169 (citation omitted).  Actual authority is present when the owner of the subject of the search "expressly authorized the third party to give consent or if the third party has mutual use [ ] and joint access to or control" of the subject of the search.  *Id*. (internal quotations and citations omitted).  Apparent authority is present if "the officers who conducted [the search] reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent."  *Id*. at 1170 (citations omitted).  The United States Supreme Court has held that the validity of consent searches is to be determined by a "voluntariness" test. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

> [W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.  While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent...In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly

10

vulnerable subjective state of the person who consents. ..[I]t is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced.

*Schneckloth*, 412 U.S. at 222; *see also U.S. v. Bautista*, 362 F.3d 584, 589 (9th Cir. 2004), *Pavao v. Pagay*, 307 F.3d 915, 919 (9th Cir. 2002).

The facts surrounding the search in question are not in dispute. Plaintiff admits that he was an overnight guest, and that Ms. McKenzie was the only person registered to the room. (Doc. # 43 5-7.) Plaintiff admits the items that were the subject of the search were found under Ms. McKenzie's mattress and in a drawer in the room. (*Id*.) Moreover, Ms. McKenzie gave written consent to search the room. (Doc. # 150 Ex. 9.) These facts demonstrate that Ms. McKenzie had actual authority to consent to the search because it appears that she had at least joint access and control over the room. In addition, she had apparent authority because from these facts it was reasonable for the officers to believe she had authority to consent to a search of the room.

The court must now determine whether the consent was voluntary. Again, the facts are not in dispute, and looking at the totality of circumstances, the court finds that the consent given by Ms. McKenzie was voluntary.

Defendant Harmon testified at Plaintiff's preliminary hearing that he made contact with Ms. McKenzie, the registered occupant of the room. (Doc. # 167 Ex. 6 at 147.) He spoke with her to find out what her involvement was with Plaintiff and whether or not he was in the room. (*Id*.) He approached the room wearing his raid jacket and knocked on the door, and when she answered the door, he asked if he could speak with her. (*Id*. at 157.) He testified that it was her choice whether she wanted to speak with him or not. (*Id*.) Defendant Lever also testified at Plaintiff's preliminary hearing . (Doc. # 167 Ex. 6 at 105-138.) He was doing surveillance and found out that Ms. McKenzie was the only occupant registered to the room. (*Id*. at 107, 116.) By the time he got to the motel, Detective Harmon was already talking to Ms. McKenzie in the

parking lot, and he walked over to them and obtained written permission to do search the room. (*Id*. at 115-116, 130-131.) He testified that he did not know if Ms. McKenzie was already being detained when he arrived at the motel, but she was standing with the officers, but not in handcuffs. (*Id*. at 135)  While he was asking her to search the room, he testified that she was not free to leave.  (*Id*. at 136.)

Courts have recognized that the fact that someone is in custody alone, is not enough to invalidate consent. *United States v. Watson*, 423 US 411, 424 (1976); *United States v. Lemon*, 550 F.2d 467, 471 (9th Cir. 1977). Even the "fact of an arrest" does not necessarily vitiate what otherwise appears to be a valid consent. *Id*. "The question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain the consent." *Id*.

While Defendant Lever testified that Ms. McKenzie was not free to leave when he requested to search the room, she was standing with the officers in the parking lot, not in handcuffs.  There is no evidence that forcible entry or any force was used, or that the officers made repeated requests for consent.  There is no evidence that weapons were drawn or used. To the contrary, the officers contend that they had no problem obtaining her written consent. These factors weigh in favor of finding the consent was voluntary.

Accordingly, summary judgment should be granted to Defendants Harmon and Lever on Count 3.

**D.      COUNT 7**

In Count 7, Plaintiff alleges violations of his rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as false arrest and malicious prosecution under state and federal law, as to Defendant Thomas.  (Doc. # 43 14-16.) Specifically, Plaintiff alleges that Defendant Thomas failed to apprise the court of facts concerning the Habeas Petition and facts relating to the adequacy of probable cause for the underlying trafficking and ex-felon in possession of a firearm charges. (*Id*.)

/ / /

1

### 1.    Fourth Amendment

*Smith v. Almada*, 623 F.3d 1078 (9th Cir.  2010), involved a similar set of circumstances.  In that case, Smith alleged that Sergeant Almada misled the magistrate judge when applying for a warrant, and asserted that if the magistrate judge had been apprised of all of the facts, he would not have found probable cause to issue the warrant.  *Id.*  at 1084.  The Ninth Circuit stated that in order "[t]o maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the arrest warrant 'deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.'" *Id.* (citation omitted).  The Ninth Circuit went on to say that "[t]he materiality element-a question for the court- requires the plaintiff to demonstrate that 'the magistrate would not have issued the warrant with false information redacted, or omitted information restored.'" *Id.*  (internal citations omitted).

Here, Plaintiff contends that Judge Polaha would not have issued the re-take warrant had he been apprised about the facts surrounding the Habeas Decision concerning Plaintiff's contention that there was not probable cause for the trafficking charge, and the facts surrounding the ex-felon in possession of a firearm charge.  (Doc. # 43 14-16.)  However, the court finds that even construing the facts in the light most favorable to Plaintiff, and assuming his assertions are true, the Judge still had a separate and independent basis for issuing the re-take warrant.  In other words, even if Plaintiff's version of events are believed, this does "not compel the conclusion that 'a neutral magistrate would not have issued the warrant.'" *Smith*, 623 F.3d at 1085.

The court reaches this conclusion in light of the following undisputed facts:

(1)    A probable cause determination was made at Plaintiff's preliminary hearing and he was bound over to the SJDC for trial on charges, including the trafficking and ex-felon in possession of a firearm charge. (*See* Doc. # 167 Ex.  6; Ex.  7.)

(2)     Plaintiff filed a Habeas Petition on August 26, 2005, asserting procedural deficiencies with the proceedings in Reno Justice Court, and  arguing that the State did not present sufficient evidence to bind Plaintiff over on the trafficking charge. (Doc. # 167 Ex. 7.)

(3)     On October 19, 2005, in the SJDC, Judge  Perry  issued the Habeas Decision granting the Habeas Petition. (Doc. # 167 Ex. 7.) The Habeas Decision was granted with respect to Plaintiff's procedural arguments.  (*Id*.)  It was specifically noted that the court was not addressing the sufficiency of evidence regarding the controlled substance charge.  (*Id*. (Habeas Decision) at 3 n. 3.) Plaintiff was released from custody.

(4)     On February 17, 2006, the Nevada Supreme Court  issued an order reversing and remanding the Habeas Decision. (Doc. # 167 Ex. 8.) The Nevada Supreme Court addressed the alleged procedural deficiencies in Reno Justice Court, but did not address Plaintiff's claim concerning lack of probable cause on the trafficking charge.

(5)     On February 22, 2006, an ex-parte hearing was held on the State's motion for the re-take warrant. (Doc. # 167 Ex. 12.) The court noted the reversal by the Nevada Supreme Court (*Id*. at 3:7-22, 4:1-9).

    (a)     The prosecutor noted that when Plaintiff was originally bound over to the SJDC, his bail was set fairly high as a result indications that he was a danger and a flight risk. (*Id*. at 4:19-20.) He highlighted the flight risk and danger to the community in light of information learned since Plaintiff was released in October 2005. (*Id*. at 4:21-23, 5:7-19.) He also addressed the jurisdictional issue, e.g., the remittitur had not yet issued, but discussed the risks of waiting to take Plaintiff into custody. (*Id*. at 6:10-20.)

14

(b)    The prosecutor put Defendant Thomas on the stand to show the increase in risk of flight and increased danger to the community posed by Plaintiff. *(Id.* at 8:4-10; *see also* Defendant Thomas's testimony at 10-24.)

(d)    The prosecutor requested the re-take warrant based on the demonstrated probable cause of the need to arrest Plaintiff in light of the Nevada Supreme Court's reversal of the Habeas Decision. (*Id.* at 24:8-24, 25:1-6.)

(e)    Judge Polaha specifically recognized that Judge Perry had granted the Habeas Petition on procedural bases. (*Id.* at 25:4-8.) He concluded that the Justice of the Peace's probable cause determination made at Plaintiff's preliminary hearing was undisturbed. (*Id.* at 25:10-11.) Judge Polaha granted the motion and ordered the re-take warrant issued and set bail at the original amount of $100,000, cash only. (*Id.* at 26:10-22.)

In light of what transpired at the hearing, the court simply cannot conclude that even if Plaintiff's allegations about Defendant Thomas testimony are true, Judge Polaha would not have issued the re-take warrant. Plaintiff is attacking the testimony of Defendant Thomas on grounds that he failed to apprise the court of the facts surrounding the probable cause determination of the underlying charges. However, Judge Polaha specifically determined that the probable cause determination of the Justice of the Peace regarding the underlying charges was undisturbed by Judge Perry's granting of the Habeas Petition. Accordingly, Defendant Thomas is entitled to summary judgment on the Fourth Amendment claim in Count 7.

### 2. Malicious Prosecution

Plaintiff asserts a claim for malicious prosecution against Defendant Thomas in Count 7 based on these same facts. (Doc. # 43 14.)

"A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against-others-including police officers and investigators-who wrongfully caused his prosecution." *Smith*, 623 F.3d at 1085 (citation omitted). "To maintain a § 1983 action for malicious prosecution, a plaintiff must show that 'the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her [a] specific constitutional right." *Id.* (internal quotations and citations omitted). "[P]robable cause is an absolute defense to malicious prosecution." *Id.* (internal citations and quotations omitted).

Here, as in *Smith*, "even after correcting for the allegedly false and omitted information" in Defendant Thomas's testimony in the hearing on the motion for a re-take warrant, probable cause supported the issuance of the re-take warrant and the court found that the Justice of the Peace's determination regarding probable cause for the underlying charges remained undisturbed. *See Smith*, 623 F.3d at 1085. Accordingly, summary judgment should be granted to Defendant Thomas on Plaintiff's malicious prosecution claim in Count 7.

### 3.     Fourteenth Amendment Due Process

In Count 7, Plaintiff also asserts that Defendant Thomas deprived him of his due process rights under the Fourteenth Amendment after arrest on the re-take warrant, because he had a liberty interest to immediately appear in court on the warrant. (Doc. # 43 14, Doc. # 165 38.)

There is no evidence before the court that Defendant Thomas had any personal involvement in the alleged due process deprivation related to Plaintiff's delay in appearing before the court after he was arrested and booked pursuant to the retake warrant. A claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts,

16

or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)(citation omitted). There is no evidence that Defendant Thomas was in any way responsible for ensuring Plaintiff was taken to court after Plaintiff was delivered to the Washoe County Detention Facility. Moreover, Plaintiff does not dispute that he was in the custody of the Washoe County Detention Facility at the time the alleged due process violations occurred. The assertion that Defendant Thomas is somehow responsible for due process violations occurring while Plaintiff is held at the Washoe County Detention Facility is therefore unsound. As a result, Defendant Thomas is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim in Count 7.

## E.     COUNT 8

In Count 8, Plaintiff alleges that he was deprived of a liberty interest when he was arrested and the Washoe County Sheriff's Department failed to promptly bring him before a magistrate after being held on the re-take warrant between February 23, 2006 and May 31, 2006. (Doc. # 43 17-18.) Plaintiff asserts violations of his rights under the Fourth and Fourteenth Amendments, and brings a claim of false imprisonment under Nevada law as to Defendants Washoe County Sheriff's Department and Balaam. (*Id.*) Because the court has granted summary judgment to the Washoe County Sheriff's Department, Count 8 is only directed at Defendant Balaam.

### 1.     Fourteenth Amendment Due Process

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Those who seek to invoke due process protections must establish one of these interests it at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005). A liberty interest may arise from either of two (2) sources: the due process clause or state law. *Id.*; *see also Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

17

Plaintiff argues he had a liberty interest in being brought before a magistrate after his arrest pursuant to the re-take warrant, arising from various sources.  Assuming, without deciding, that Plaintiff had such a liberty interest, the court finds that Defendant Balaam is entitled to summary judgment on this claim.

As stated above, a claim brought under 42 U.S.C. § 1983 requires a specific relationship between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). There is no evidence that Defendant Balaam  personally participated in the delay in Plaintiff appearing before the court.     Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). To show a prima facie case of supervisory liability, plaintiff must show that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989)(internal quotations and citations omitted).

Here, there is no evidence that Defendant Balaam personally participated in the delay of Plaintiff appearing in court after he was taken into custody pursuant to the re-take warrant. There is no evidence that Defendant Balaam actually knew about the delay and failed to act to prevent it.  Therefore, to impose liability on Defendant Balaam for a violation of Plaintiff's due process rights, there must be evidence that he promulgated or implemented a policy so deficient that it is a repudiation and moving force behind the violation of Plaintiff's constitutional rights.  The court finds that the evidence does not demonstrate that Defendant Balaam promulgated such a policy.

There is no dispute regarding the facts surrounding this claim.  Plaintiff did not make an actual appearance in court between the time he was booked on February 23, 2006 until he appeared before the SJDC on May 31, 2006.  (*See* Doc. # 178 3-4.)  After being booked, on March 7, 2006, Plaintiff completed an inmate request form stating that he had not been taken to court.  (Doc. # 167 Ex.  17.)  Detention center staff responded on April 7, 2006 that his request was being forwarded to the prosecutor's office for setting.  (*Id*.)  Plaintiff filed several court documents during this time period, including the petition for rehearing to the Nevada Supreme Court, and an emergency motion to quash warrant/bail hearing .  (*See* Doc. # 167 Ex. 10, Ex.  13.)  The Nevada Supreme Court denied the petition for rehearing on April 21, 2006.  (Doc. # 167 Ex.  13.)  On the same date, Plaintiff filed a proper person petition for writ of mandamus in the Nevada Supreme Court.  (Doc. # 178 Ex. 29.)  On April 25, 2006, detention center staff sent an email to the SJDC concerning the status of Plaintiff's setting.  (Doc. # 167 Ex.  15.)  On May 17, 2006, the remittitur issued from the Supreme Court, reinstating jurisdiction to the SJDC.  (Doc. # 152 Ex.  14.)  The remittitur was received and filed in the SJDC on May 23, 2006.  (*Id*.)  On May 31, 2006, Plaintiff appeared in the SJDC.  (Doc. # 167 Ex.  21.)

Defendant Balaam was not responsible for the delay in Plaintiff's court appearance.  Nor was the delay a result of any policy implemented by him as Sheriff of Washoe County.  The Washoe County Sheriff's Department policy is that when an individual is booked into the detention facility, all information is entered into a computer database that automatically creates a court date within the statutory time frame, and a defendant is transported to court or to a video arraignment, unless otherwise instructed by the magistrate.  (Doc. # 167 Ex.  27, response to Pl.'s Interrog. No.  1).)  This computer program would reflect the content of any district court orders as well as charges on which an inmate was being booked or rebooked.  (*Id*., response to Pl.'s Interrog. No.  4.)  In addition, district courts determine who is brought to court and when.  (*Id*., response to Pl.'s Interrog. No. 9.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  The delay in Plaintiff's appearance before the court appears to have been caused by a combination of factors, including the fact that SJDC lacked jurisdiction over the case until the remittitur issued on May 17, 2006. Once it regained jurisdiction, Plaintiff appeared in court on May 31, 2006. There is no evidence that Defendant Balaam promulgated or implemented a policy so deficient so as to be a repudiation and moving force of a constitutional violation. To the contrary, the discovery responses indicate that detention facility policies of taking persons into custody and arranging for court appearances are detailed and involve the use of technology aimed to prevent these types of events from occurring. For these reasons, summary judgment should be granted to Defendant Balaam on Plaintiff's due process claim under Count 8.

  **2. Fourth Amendment**

  Plaintiff alleges an unlawful seizure when he was taken into custody on February 23, 2006, as a result of the court's lack of jurisdiction to issue the re-take warrant on February 22, 2006. (Doc. # 43 17-18.)

  It is undisputed that the Nevada Supreme Court has ruled that the SJDC lacked jurisdiction to issue the re-take warrant on February 22, 2006 because the remittitur had yet to issue. (Doc. # 167 Ex. 13.) However, the remittitur issued on May 17, 2006, reinstating jurisdiction to the SJDC. (*Id.*) The Nevada Supreme Court directed that the re-take warrant be issued, nunc pro tunc, to the date of issuance of the remittitur. (*Id.*) There does not appear to be a dispute that the re-take warrant was therefore invalid, and Plaintiff's detention unlawful, for the period of time between February 23, 2006 and May 17, 2006. However, since the court has found the Washoe County Sheriff's Department is not a proper defendant to this action, Defendant Balaam is the only defendant to which this claim is directed. (*See* Doc. # 43 17.) For the reasons set forth below, the court finds that Defendant Balaam is entitled to qualified immunity as to Plaintiff's Fourth Amendment claim.

/ / /

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (citation and internal quotations omitted). Under certain circumstances, state officials are entitled to qualified immunity when sued in their personal capacities. *Carey v. Nev. Gaming Control Bd.*, 279 F.3d 873, 879 (9th Cir. 2002). When a government official reasonably believes his or her acts were lawful in light of clearly established law and the information they possessed, the official may claim qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam); *Orin v. Barclay*, 272 F.3d 1207, 1214 (9th Cir. 2001). Where "the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), abrogated on other grounds in *Pearson v. Callahan*, 555 U.S. 223 (2009) ("while the sequence set forth [in Saucier] is often appropriate, it should no longer be regarded as mandatory").

In analyzing whether a defendant is entitled to qualified immunity, the court must consider two issues. The court must determine whether the plaintiff alleges a deprivation of a constitutional right, assuming the truth of his factual allegations, and whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (2010) (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. 808, 816 (2009)). "Whether a right is clearly established turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Pearson*, 555 U.S. 223, 129 S.Ct. at 822).

Here, the court finds that Plaintiff does allege a deprivation of his Fourth Amendment right to be free from unreasonable seizure in connection with his detention from February 23, 2006 through May 17, 2006. While the general law concerning the Fourth Amendment was established at the time of the alleged constitutional violation, whether it is clearly established

for purposes of qualified immunity turns on the "objective legal reasonableness of the action."

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (citations and quotations omitted). The court finds that this is an occasion where the balance should tip in favor of shielding Defendant Balaam from liability because, under the circumstances, he performed his duties reasonably.

The facts leading up to Plaintiff's detention are not in dispute. Defendant Balaam was the Sheriff of Washoe County while Plaintiff was detained at the Washoe County Detention Facility, and admits that he had custody of the jail and its prisoners pursuant to NRS 248.050 at all times relevant to this claim. (Doc. # 167 Ex. 28, response to Pl.'s Request for Admission (RFA) Nos. 1-2.) The court finds that under the circumstances, Defendant Balaam's action of accepting a pretrial detainee, arrested pursuant to a re-take warrant that, for his purposes, appeared valid on its face, was reasonable. For these reasons, Defendant Balaam is entitled to qualified immunity and summary judgment should be granted in his favor.[4]

## F.    COUNT 9

Count 9 alleges a conspiracy between Defendants Washoe County Sheriff's Department, Balaam, Keller, Thomas, and Lever based on the allegations in Counts 7 and 8. (Doc. # 43 19-22.) In particular, Plaintiff alleges that these defendants conspired to re-arrest him based on an invalid warrant.

---

[4]   The court notes that it reaches the same conclusion under a personal participation/supervisorial liability analysis. *E.g.,* Defendant Balaam did not personally participate in the detention, and did not promulgate a policy so deficient that it is repudiation and moving force behind the violation of Plaintiff's constitutional rights.

"To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  A conspiracy claim brought under § 1983 requires proof of (1) an agreement or meeting of the minds to violate constitutional rights, and (2) an actual deprivation of constitutional rights resulting from the alleged conspiracy. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."

After thoroughly reviewing all of the evidence submitted by the parties, the court finds that there is no evidence of an agreement or meeting of the minds to deprive Plaintiff of his constitutional rights.  As such, summary judgment should be granted to these defendants as to Count 9.

## G.   COUNT 10

In Count 10, Plaintiff asserts that various conditions of his pretrial confinement at the Washoe County Detention Facility amounted to punishment without due process of law. (Doc. # 43 23-27.)  Plaintiff asserts that his treatment mirrored restrictions imposed on disciplinary segregated inmates, particularly with respect to tier time, visitation privileges, and possession of commissary items and reading materials.  In addition, Plaintiff asserts that his transfer from general population upon intake to Behavior Review without a hearing denied him due process rights under the Fourteenth Amendment.

### 1.   Pretrial Detention Conditions of Confinement

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535, n. 16 (1979) (noting that it is the "Due Process Clause rather than the Eighth Amendment" that applies to claims of pretrial detainees).  However, "[n]ot

23

every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id*. at 537. "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial." *Id*. "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Id*.

A court must decide whether the condition is imposed "for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538 (citation omitted). "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id*. (citations omitted). The test is therefore whether a condition is "reasonably related to a legitimate governmental objective." *Id*. at 539. This determination is to be made keeping in mind that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540 (internal quotations and citations omitted). In *Bell*, the Supreme Court pointed out that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. "Prison administrators therefore should be accorded wide-ranging

1
2
3

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547 (citations omitted).

4
5
6
7
8
9
10
11
12
13
14

Plaintiff was in Behavior Review for a period of approximately two weeks. (Doc. # 166 62, *see also* Doc. # 152 Ex. 20-23.) He asserts that the conditions during these two weeks amount to punishment. (Doc. # 43 23-27.) He asserts that protective custody inmates were allowed out of their cells every day for morning, afternoon, and nighttime tier time while he only was allowed out of his cell every other day for one hour and fifteen minutes. (*Id.* at 24.) He asserts that he was not allowed to have books in his cell, was forced to live with another inmate and had to expose himself to the other inmate when he had to use the bathroom. (*Id.* at 25.) He claims that he had to eat meals in a small cell, in close proximity to the toilet, which was not clean. (*Id.*) He also asserts that his cell space was insufficient, and he was not allowed to buy commissary items. (*Id.*) Finally, he claims that he was only allowed one visit every two weeks for one hour. (*Id.*)

15
16
17
18
19
20

The court cannot ignore the circumstances under which Plaintiff alleges he was subject to conditions amounting to punishment. He claims to have endured these conditions for approximately two weeks while he was placed in Behavior Review, a form of administrative segregation where inmates are placed after intake, as a result of the nature of his charges and prior criminal history, to determine how he would act in the facility and whether he posed a threat to the facility. (*See* Doc. # 167 Ex. 27, response to Pl.'s Interrog. Nos. 26-30.)

21
22
23
24
25
26

While Washoe County Defendants acknowledge that Plaintiff's classification in administrative segregation for approximately two weeks resembled disciplinary segregation status more closely than it mirrored protective custody status, they maintain that it did not amount to punishment, the disciplinary segregation was still more restrictive, and that the determinations were made for the order and security of the institution. (Doc. # 178 18.) The court will not substitute its judgment for that of the detention facility with respect to measures

27
28

25

clearly taken to maintain order and security.   The court finds the conditions, while uncomfortable, were not imposed with an intent to punish, but rather, to achieve order and security within the facility.   As such, the court finds that the conditions of confinement imposed on Plaintiff for approximately two weeks while in Behavior Review were reasonably related to legitimate governmental interests.   Therefore, summary judgment should be granted as to Washoe County Defendants on this claim.

### 2.    Procedural Due Process

Plaintiff alleges that his classification from intake to the administrative segregation Behavior Review without a hearing deprived him of his due process rights.

As stated above, the Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  Those who seek to invoke due process protections must establish one of these interests it at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005).  A liberty interest may arise from either of two (2) sources: the due process clause or state law. *Id.*; *see also Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

The Ninth Circuit has held that a pretrial detainee who is placed in disciplinary segregation as punishment has a right to a due process hearing.  *See Mitchell v.  Dupnik*, 75 F.3d 517, 524 (9th Cir.  1996).  Federal courts have also held, however, that pretrial detainees may be subjected to administrative segregation without a hearing if the condition is imposed for purposes of maintaining institutional security and not as punishment.  *See Rapier v. Harris*, 172 F.3d 999 (7th Cir.  1999); *Peoples v.  CCA Detention Centers*, 422 F.3d 1090 (10th Cir.  2005).

Plaintiff's segregation was imposed not as discipline, but as administrative segregation to achieve order and security in the facility.  Plaintiff admits he was placed in Behavior Review after being classified upon intake.  According to Washoe County Defendants' discovery

26

responses, this was a result of his prior criminal history and current charges, and was to determine how he conducted himself in the facility and whether he posed a threat to the facility.  (Doc. # 167 Ex. 27, response to Pl.'s Interrog. Nos. 26-30.)  He does not dispute that he was moved to general population after a period of approximately two weeks.  It is clear that his placement in Behavior Review was for security reasons, and not as punishment for a violation of prison rules.  "Absent a showing of an express intent to punish on the part of detention facility officials, …if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Bell*, 441 U.S. 520, 538-39 (1979); *see also Martucci v. Johnson*, 944 F.2d 291, 294-95 (6th Cir.  1991)(prisoner placed in segregated confinement for administrative reasons related to prison security did not have due process right to not be placed in segregation, and lack of hearing did not violate procedural due process.)  The court finds that placing Plaintiff in Behavior Review for a limited time period to determine whether he poses a risk to the facility in light of his criminal history and charges is a legitimate governmental purpose, and was not imposed as punishment.  Plaintiff did not have a constitutional right to a hearing.  Accordingly, summary judgment should be granted to Washoe County Defendants on this claim.

## H.    REMAINING STATE LAW CLAIMS

Because the court has recommended dismissal all of the federal claims, leaving only state law claims for resolution, the District Judge should decline to exercise jurisdiction over the state law claims and dismisses them without prejudice.  *Les Shockley Racing, Inc.  v.  Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir.  1989).

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an Order: (1) **GRANTING** Reno Defendants' motion for summary judgment; (2) **GRANTING** Washoe County Defendants' motion for summary judgment; and (3) **DENYING** Plaintiff's motion for

summary judgment.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order dismissing Plaintiff's remaining state law claims for false arrest (Count 7), malicious prosecution (Count 7), and false imprisonment (Count 8), without prejudice.

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED:  February 4, 2011.

_____
UNITED STATES MAGISTRATE JUDGE